# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:19-cv-00074-MR

| | |
|---|---|
| DEMIRUS JEROME CRAWFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ISLAM ABDLEGHAFAR, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on the parties' motions for summary judgment. [Docs. 38, 41].

## I. PROCEDURAL BACKGROUND

Pro se Plaintiff Demirus Jerome Crawford ("Plaintiff") is a North Carolina inmate currently incarcerated at Scotland Correctional Institution in Laurinburg, North Carolina. He filed this action on June 10, 2019, pursuant to 42 U.S.C. § 1983 against Defendants Islam Abdleghafar, identified as a correctional officer at Alexander Correctional Institution ("Alexander"), and the North Carolina Department of Public Safety (NCDPS). [Doc. 1]. Plaintiff did not specifically identify the nature of his claim and, on initial review, the Court identified it as an excessive force claim under the Eighth Amendment. [Doc. 11 at 1]. Plaintiff also failed to specify whether he was suing Defendant

Abdleghafar in his individual or official capacity, or both. [See id. at 3-4]. Plaintiff's claim against Defendant Abdleghafar survived initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A.[1] [Doc. 11]. The Court appointed the North Carolina Prisoner Legal Services (NCPLS) to conduct discovery on Plaintiff's behalf. [Doc. 24].

On February 2, 2021, Defendant moved for summary judgment. [Doc. 38]. In support of this motion, Defendant submitted a memorandum and all discovery responses he had propounded on Plaintiff, which included records related to the use of force incident at issue, Defendant's training transcript, nearly 300 pages of Plaintiff's medical record, various NCDPS Policies, and disciplinary records of Defendant related to the incident. In his memorandum, Defendant admits that he improperly administered pepper spray into Plaintiff's cell after Plaintiff made offensive remarks regarding Defendant's religion and family. [Doc. 38-3 at 3]. Defendant, however, argues that Plaintiff's medical record does not "reflect any injury that can be tied directly to this incident," and "any injuries sustained were *de minimis* and Plaintiff cannot prove damages." [Id. at 8, 9].

---

[1] Defendant NCDPS was dismissed on initial review for the reasons stated in the Court's Order. [Doc. 11 at 3-4].

2

On February 10, 2021, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 39]. In response to Defendants' motion, Plaintiff filed a cross-motion for summary judgment. [Doc. 41]. In support of his motion, Plaintiff submitted a memorandum and affidavit, which incorporated relevant photographs and prison records and select discovery responses by Defendant.[2] [Doc. 41-1]. Defendant did not respond to Plaintiff's cross-motion.

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

---

[2] Neither party submitted video footage of the incident to the Court.

3

Case 5:19-cv-00074-MR    Document 44    Filed 08/02/21    Page 3 of 16

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n. 4 (1st Cir. 1997) (citation omitted)). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Id. (quoting Wrightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

"'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

The relevant forecast of evidence before the Court is as follows:

Plaintiff is a prisoner of the State of North Carolina. On December 14, 2018, Plaintiff was housed at Alexander in the restrictive housing unit. [Doc.

5

38-2 at 3]. Defendant was a Correctional Officer at Alexander from March 2017 to October 2019, when he assumed the position of Correctional Sergeant. [Id. at 2]. On December 14, 2018, Defendant was assigned to the cell extraction team. [Id. at 3]. After assembling in the restrictive housing unit, the team performed a cell extraction two cells away from Plaintiff. Defendant contends that when he entered the wing, Plaintiff targeted him, stating "Abdelghafar is with them too that mother fucker he is not a Muslim," and made threats to Defendant's family. [Id. at 3]. Defendant contends that after the cell extraction was complete, he returned to Plaintiff's cell to talk to him and that Plaintiff was sitting on his bed and said, "did you bring your mama with you?" Defendant states that he then opened the trap door and sprayed pepper in Plaintiff's direction on the bed. [Id.]. Defendant contends, however, that no pepper spray got on Plaintiff "because the distance from the door and the bed was too far and offender Crawford held up the bed cover." [Id.]. Plaintiff, on the other hand, attests that he was lying in his bed when Defendant returned to Plaintiff's cell and that Plaintiff did not "engag[e] in any verbal provocation with the defendant," but rather Defendant "maliciously and without warning" opened Plaintiff's trap door and sprayed pepper spray into Plaintiff's cell. [Doc. 41-1 at 3]. Plaintiff attests that he "would have been sprayed much worse if not for his quick thinking to grab

6

his bed cover to shield himself." [Id.]. Plaintiff's bed, pillow, walls, and personal possessions were sprayed during the incident.[3] [Doc. 41-1 at 4; 6-7]. Plaintiff, however, does not forecast evidence that he was pepper sprayed anywhere on his body. [See Doc. 41-1]. As noted, neither party submitted video footage of the incident to the Court. The Incident Report, prepared because of the unanticipated use of force by Defendant, detailed the incident as follows:

> On 12/14/18 at 1539 hours, Officer Abdelghafar entered the NPOD-wing and opened the food port on the cell door of D-007 that is assigned to [Plaintiff] at 1540 hours he administered a burst of O.C. Pepper spray, at 1540 hours he opens the food port and administers another burst of O.C Pepper spray. The sergeant on duty arrives and orders Officer Abdelghafar out of the wing. [Plaintiff] is removed from his cell and taken to the lower shower area in NPODD-wing and offered a decontamination shower, he refused[4] and was monitored by Officer Martin, RN Propst reports a use of force assessment was conducted.

[Doc. 38-2 at 30-31; Doc. 41-1 at 12 (errors uncorrected)]. NCDPS Policy, Use of O.C. Pepper Spray, Section .0004(c)(4) and (6), provides that pepper

---

[3] The parties also submitted photographs of Plaintiff's hands after the pepper spray incident. [Doc. 41-1 at 9; Doc. 38-2 at 18-19]. It is not clear from the pictures whether there is pepper spray on Plaintiff's hands and Plaintiff does not contend that there was.

[4] Zane Martin, a correctional officer who monitored Plaintiff after the incident, reported that Plaintiff refused a decontamination shower because there was "no spray on his face or head." [Doc. 38-2 at 37; see Doc. 38-2 at 2].

7

spray "may not be used maliciously or as punishment" and "will not be used as the result of the use of offensive language alone." [Doc. 38-2 at 417]. As a result of the incident, Defendant was issued a written warning, denied a Field Training Officer position, and suspended from the prison response team for approximately one year. [Id. at 6].

Plaintiff forecasts no evidence of any personal injury from Defendant's conduct. Plaintiff comments only that Defendant's summary judgment materials are largely irrelevant save "only the first 15 pages [in] addition to a few sick call request forms filled out by plaintiff complaining about having problems with his vision … possibly from the result of being pepper sprayed on 12/14/2018." [Doc. 41-1 at 24, 28 (emphasis added)].

Defendant's forecast of evidence shows that, approximately two months after the incident, Plaintiff began submitting Sick Call Requests related to problems with his eyesight. [Doc. 38-2 at 216-218]. Plaintiff complained that his vision was blurry and that he was seeing "little light spots," which Plaintiff noted started after he was maced. [Id.]. On February 22, 2019, Plaintiff was seen for a sick call visit for these complaints. He was given a vision screen and referred to an optometrist for impaired vision. [Id. at 89-90]. On March 15, 2019, Plaintiff was transferred to Marion Correctional Institution ("Marion"). [Id. at 90]. At Marion, Plaintiff continued

to complain of blurry vision and began complaining about "massive headaches" and nosebleeds. [Id. at 198, 204]. Plaintiff was seen by a nurse on May 16, 2019 and by an optometrist on May 30, 2019 at Marion for these symptoms. [Id. at 76-77, 79]. The optometrist prescribed reading glasses for Plaintiff and found, on examination, that Plaintiff had a vision impairment from multiple head traumas that was uncorrectable. [Id. at 77]. Plaintiff received his glasses on June 10, 2019. [Id. at 179].

In February and March 2020, Plaintiff again began to complain of blurred vision, eye pain, and headaches, which Plaintiff complained were exacerbated by bright lights and reading. [Id. at 239, 242, 247, 342, 343, 344, 346, 347, 251, 253]. Plaintiff was seen for these complaints several times during February, March, and April 2020. [Id. at 237, 239, 242, 247, 251, 253]. Plaintiff was issued another pair of glasses in March 2020. [Id. at 245]. In May 2020, Plaintiff began complaining of tooth pain and of grinding his teeth. [Id. at 336, 338, 339]. Finally, in August 2020, Plaintiff was seen by an optometrist at Central Prison for complaints of blurred vision. He was diagnosed with hypermetropia (farsightedness) and given a new

9

prescription for glasses, which he received a couple of weeks later.[5] [Id. at 116, 226].

## IV. DISCUSSION

Defendant admits that he improperly sprayed pepper spray through the trap door of Plaintiff's cell and argues that because Plaintiff suffered no more than *de minimis* injury as a result, he cannot sustain an Eighth Amendment claim. [Doc. 38-3 at 8-10]. Notably, Defendant does not argue that the Eleventh Amendment bars any official capacity claim Plaintiff may have brought. [See Doc. 38-3]. The Court will, nonetheless, address this issue. McRay v. Maryland Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*.") (citation omitted).

### A. Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.;

---

[5] When synthesizing Plaintiff's collective medical record, the implication is that Plaintiff's uncorrectable vision impairment creates or is consistent with myopia, or nearsightedness, while Plaintiff's hypermetropia, or farsightedness, is correctable with reading glasses.

see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendant is entitled to summary judgment on Plaintiff's official capacity claim, to the extent Plaintiff intended to assert one.

### B. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently

serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Regarding the objective component, Defendant argues that "absent the most extraordinary circumstances force which inflicts no injury or de minimis injury does not satisfy the objective prong of the inquiry." [Doc. 38-2 at 8 (citing Norman v. Taylor, 25 F.3d 1259, 1262-63 (4th Cir. 1994))]. This is old, bad law. In Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175 (2010), the Supreme Court abrogated Norman and reiterated its holding in Hudson v. McMillan, 503 U.S. 1, 112 S.Ct. 995 (1992). In Hudson, the Supreme Court

held that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." 503 U.S. at 4. Moreover, the Court "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim. The 'core judicial inquiry,' [the Court] held, was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 7). "'When prison officials maliciously and sadistically use force to cause harm,' the Court recognized, 'contemporary standards of decency are always violated … whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" Id. (quoting Hudson, 503 U.S. at 9).

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition

13

> de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 37-38 (citations omitted).

Here, Defendant's use of pepper spray had no purpose other than to cause harm to Plaintiff. Plaintiff was in his cell, either sitting or lying on his bed, and of absolutely no threat to Defendant or anyone else. Defendant's conduct, at best, was in retaliation for Plaintiff's alleged slurs and threats against Defendant's family. See Dean v. Jones 984 F.3d 295, 302 (4th Cir. 2021) (Officers "cross the line into an impermissible motive when they inflict pain not to protect safety or prison discipline but to punish or retaliate against an inmate for his prior conduct.") (citations omitted). The forecast of evidence, therefore, easily satisfies the subjective inquiry.

The Court turns to the objective inquiry. Other than Plaintiff's bare statements of the timing of some of his symptoms relative to Defendant's conduct, the medical record supports no causal connection between them. Rather, the medical record supports that Plaintiff has an uncorrectable vision impairment due to a previous head injury, that Plaintiff needed and was

14

prescribed reading glasses, and that Plaintiff suffered from possible migraine headaches. There is no forecast of evidence that Plaintiff was touched by the pepper spray at all. In fact, Plaintiff has forecast no evidence of damages other than his bedding and some of his personal property having been covered in pepper spray. The forecast of evidence, therefore, is insufficient, as a matter of law, to warrant summary judgment in Plaintiff's favor on the objective inquiry of Plaintiff's Eighth Amendment claim.

Defendant's motion for summary judgment on Plaintiff's individual capacity claim will, therefore, be denied and Plaintiff's cross-motion for summary judgment will also be denied.[6] The jury must decide whether Defendant's use of force was constitutionally excessive and, if so, what damages Plaintiff may be entitled to.

## V. CONCLUSION

In sum, for the reasons stated herein, the Court grants summary

---

[6] Defendant argues that he is entitled to qualified immunity. [Doc. 38-3 at 10-12]. Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A prison official's gratuitous or excessive use of pepper spray against an inmate has long since been recognized as violative of such inmate's constitutional rights. See Iko v. Shreve, 535 F.3d 225 (4th Cir. 2008); Williams v. Benjamin, 77 F.3d 756 (1996). Because the forecast of evidence here, taken in the light most favorable to the Plaintiff, would tend to show that Defendant's conduct violated a clearly established constitutional right, Defendant is not entitled to summary judgment on the issue of immunity.

judgment for Defendant on Plaintiff's official capacity claim, to the extent he asserted one; denies summary judgment for Defendant on Plaintiff's individual capacity claim; and denies Plaintiff's cross-motion for summary judgment. The Court will enter an Order contemporaneously herewith ordering the parties to notify the Court whether they consent to a judicial settlement conference. Should this matter not be resolved through such conference, the Court will set this matter for trial on the issue of damages as soon as feasible.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 38] is **GRANTED IN PART** as to Plaintiff's official capacity claim and **DENIED IN PART** as to Plaintiff's individual capacity claim against Defendant.

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment [Doc. 41] is **DENIED**.

**IT IS SO ORDERED**.

Signed: August 2, 2021

Martin Reidinger
Chief United States District Judge

16

Case 5:19-cv-00074-MR   Document 44   Filed 08/02/21   Page 16 of 16